NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL TSAKONAS, : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | Civil Action No. 04-CV-4973 (DMC) |
| WARDEN EDMOND CHICCI, : | |
| individually and as Warden at : | |
| MIDDLESEX COUNTY CORRECTION : | |
| CENTER, et al. : | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion of Defendants Maria McQuay, Kathy DeFuria, Middlesex Vicinage Probation Division (MVPD), Manoj Thomas, Collette Dorival, Victoria Canavera, and Trenton Psychiatric Hospital (TPH) to dismiss Plaintiff Paul Tsakonas' Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Because Defendants have presented to this Court matters outside the pleadings, the motion will be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is **granted in part and denied in part**.

I. BACKGROUND

**Procedural History**

Plaintiff filed an initial Complaint on October 12, 2004, against Defendants State of New

Jersey ("the State"), Trenton Psychiatric Hospital ("TPH"), the County of Middlesex ("the County"), Middlesex County Adult Correction Center ("MCACC"), and Edmond Cicchi, Warden at the MCACC.  Plaintiff filed a "Second Amended Complaint"[1] on May 27, 2005.  The Second Amended Complaint alleged the same claims as the initial complaint but added the following Defendants: the Middlesex Vicinage Probation Department ("MVPD"); Maria McQuay, a probation officer at MVPD; Kathie DeFuria, a supervisor at MVPD; the Division of Mental Health Services (DMHS); William May, chief executive officer of TPH; Colette Dorival, an employee at TPH; Vicki Canavera, a coordinator at Ann Klein Forensic Center (AKFC); Peter C. Harvey, Attorney General of the State of New Jersey; Hugh Moore, M.D., a doctor at MCACC; Sandra Vargas, a nurse at MCACC, and John Doe.  Defendant was granted leave to file a Third Amended Complaint on December 1, 2005, asserting different claims.  The Third Amended Complaint alleges the following causes of action:

- Count I- 42 U.S.C.1983 action for Malicious Prosecution and violation of the Fourth Amendment by Defendants McQuay, DeFuria, MVPD, and the County;
- Count II- 42 U.S.C. 1983 action for violation of the Eighth and Fourteenth Amendments by Defendants MCACC, the County, Cicchi, Moore, Vargas, Canavera, TPH, May, Thomas, and Dorival
- Count III- Violation of New Jersey Law against Discrimination by Defendants MCACC, the County, Cicchi, Moore, Vargas, and Canavera
- Count IV- Violation of Title II of the ADA by Defendants MCACC and County;
- Count V- Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against Defendants MCACC and the County
- Count VI- Malicious prosecution and abuse of process by Defendants McQuay, DeDuria, MVPD, and the County.
- 

(Pl. Third Am. Comp.)  Plaintiff does not name DMHS, the State or the Attorney General in the

---

[1] Plaintiff captioned his amended complaint a "Second Amended Complaint."  Although the Complaint filed on May 27, 2005 properly should be referred to as a First Amended Complaint, for convenience the Court will refer to the Complaint as the Second Amended Complaint.

Third Amended Complaint.

On December 22, 2005, Defendants Vargas and Moore filed an answer to the Third Amended Complaint and filed cross-claims against Defendants TPH, Canavera, McQuay, DeFuria, MVPD, the County, May, Thomas, Dorival and the State.  On January 11, 2006, Defendants Cicchi, MCACC, and the County (collectively the "Correction Defendants") filed an answer to the Third Amended Complaint, a cross-claim for indemnification against all co-defendants and John Doe, and a third party complaint for contractual indemnification against C.F.G. Health Systems, LLC.

Defendants MVPD, McQuay and DeFuria (the "Probation Defendants"), TPH, Thomas, and Dorival (the "TPH Defendants") and Canavera submit this brief in support of their motion to dismiss the third amended complaint and the cross claims.

**Factual History**

For purposes of this motion, Defendants have asked this Court to consider the factual allegations in Plaintiff's Complaint and the Certification of Amy E. Duff and the Exhibits annexed thereto.  The Court will also consider the Certification of Wendy Tsakonas.

On or about March 6, 2003, Plaintiff pleaded guilty to violating a restraining order issued by the Middlesex County Family Court and was sentenced to one year of probation.  (Plaintiff's Complaint[2] at ¶17; Cert. of Amy Duff "Duff Cert.", Ex. D.)  One of the conditions of Plaintiff's probation was compliance with all counseling deemed necessary by probation.  (Duff Cert, Ex. D.)

In the fall of 2003, Plaintiff's mother, Wendy Tsakonas, contacted the MVPD and

---

[2] For purposes of this Opinion, any and all citations to "Plaintiff's Complaint" are references to Plaintiff's Third Amended Complaint.

expressed concern that Plaintiff had a drug problem. (Comp. ¶19.) She requested that the MVPD assist in placing Plaintiff in a drug rehabilitation treatment center. (Id.) Although the MVPD could not locate a program with openings, Ms. Tsakonas found a program in Trenton called "Last Chance." (Comp. ¶20.) Plaintiff, however, stated that he would not enter "Last Chance." (Id.) Because Plaintiff would not voluntarily enter "Last Chance", Defendants Mcquay and Defuria determined in or about the end of October or beginning of November 2003 that Plaintiff was not amenable to probation. (Comp. ¶21.) In the beginning of November 2003, Defendants Mcquay and Defuria filed a Violation of Probation-Statement of Charges with the Middlesex County Family Court charging Plaintiff with violating the conditions of his probation. (Comp. ¶23.) In the Statement of Charges, Defendants McQuay and Defuria stated that Plaintiff failed to report to the Probation Officer as directed on March 26, 2003, April 23, 2003, June 3, 2003 and October 8, 2003, refused to enter the Last Chance inpatient program, and failed to provide proof that he attended an anger management program at Somerset Counseling Center. (Comp. ¶24; Duff Cert., Ex. E.) Plaintiff states that he did report to his Probation Officer Ana Bucsek ("Bucsek") during this period as indicated by a travel permit signed by Bucsek on July 28, 2003, permitting Defendant to visit the State of Florida from July 29 to August 31, 2003. In a fax to Plaintiff's mother dated October 14, 2003, Bucsek instructed Plaintiff's mother to have Plaintiff contact her on December 18, 2003. (Comp. ¶¶25 to 28.)

    On or about November 6, 2003, Plaintiff appeared before the Hon. Jessica R. Mayer J.S.C. where he was taken into custody on charges of violating his probation. (Comp. ¶29.) On that same date, Judge Mayer ordered the medical personnel at MCACC to make arrangements for a thirty-day inpatient evaluation of Plaintiff at the Ann Klein Forensic Center as soon as possible.

(Comp. ¶30.) Plaintiff was examined after being admitted to MCACC on November 7, 2003 and was found to be stable and not in need of treatment. (Comp. ¶31.) Three days later, Plaintiff was diagnosed with psychosis and schizophrenia. (Comp. ¶32.) Defendant Moore referred Plaintiff for a crisis assessment at the University of Medicine and Dentistry ("UMDNJ"). (Comp. ¶33.) The results of the assessment indicated that Plaintiff had a psychotic disorder and a polysubstance dependence but he did not meet the required standard of dangerousness required for civil commitment. (Comp. ¶¶34-5.) Plaintiff was returned to the MCACC. (Comp. ¶34.)

On or about November 17, 2003, an Order was entered by Judge Mayer directing the medical personnel at the MCACC to arrange a thirty day inpatient evaluation of Plaintiff at TPH as soon as possible. (Comp. ¶37.) The next day, Judge Mayer ordered Plaintiff to be examined by a qualified psychiatrist or licensed psychologist at the MCACC to determine whether hospitalization was required to perform an examination for fitness to proceed. (Comp. ¶38; Duff Cert. Ex I.) Judge Mayer further ordered that should hospitalization be determined necessary, Plaintiff was to be committed to the custody of the Commissioner of Human Services for placement for that purpose for a period not exceeding thirty days. (Id.)

Defendant Vargas scheduled Plaintiff for an evaluation on November 19, 2003. (Comp. ¶39.) Dr. Christine Joseph of the Ann Klein Forensic Center evaluated Plaintiff. By way of a letter dated December 12, 2003, Defendant Canavera reported to Judge Mayer that Plaintiff was being recommended for an in-patient evaluation to the TPH. (Comp. ¶42; Duff Cert, Ex. K.) Defendant Canavera also noted in the letter that Dr. Joseph noticed Plaintiff had a strong body odor and had not been showering unless forced to do so. (Id.)

Plaintiff asserts that while imprisoned at MCACC his condition deteriorated and he

stopped eating, brushing his teeth, bathing or communicating with others. (Comp. ¶45.) He also did not move his bowels for thirty (30) days. (Comp. ¶45.) In addition, Plaintiff alleges that he was pushed by a corrections officer, causing Plaintiff to injure his wrist and hand. (Comp. ¶46.) During his time at MCACC, other inmates taunted Plaintiff and told him that they had killed people; one inmate said he had choked someone to death. (Comp. ¶47.) On December 30, 2003, a guard at MCACC was reportedly called to Plaintiff's cell where Plaintiff was observed "punching walls and spitting." While at MCACC, Plaintiff was not permitted to have visitors. (Comp. ¶ 49). Plaintiff's mother's requests to visit Plaintiff were denied, as were her requests to speak with Plaintiff via telephone. (Comp. ¶49.) During the time that Plaintiff was at MCACC, Plaintiff's mother spoke with Defendant Moore, Ana Busczek of the Middlesex County Probation Department and Defendant Cicchi. (Comp. ¶50.) Plaintiff's mother asserts that during her conversations with Defendant Moore, Defendant Moore acknowledged that Plaintiff should not be at MCACC, that he was not receiving proper medical treatment, and that his condition was worsening. (Comp. ¶51.)

Plaintiff was transferred to TPH on or around January 7, 2004. (Comp. ¶¶44,55.) Upon his arrival at TPH, his appearance was disheveled with poor hygiene and he had several physical disorders including eczema on his feet, seborrhea of the scalp, athlete's foot, and swelling of his right hand and knuckles. (Comp. ¶¶53-54.) Plaintiff was a patient at TPH from January 8, 2004 until February 5, 2004. (Comp. ¶55.) When Plaintiff's mother visited Plaintiff on January 13, 2004, she was told that Plaintiff had not showered and had been in the same clothes for three days. (Comp. ¶56.) On January 14, 2004, Plaintiff's mother visited Plaintiff and observed that he was still wearing the same clothes. (Comp. ¶57.) Plaintiff claims that he was prevented from

taking a shower on January 26, 2004. (Comp. ¶58.) Plaintiff alleges that on or about February 2, 2004, he was physically attacked by a patient named Pedro who had previously attacked three other patients. (Comp. ¶59-61.) Plaintiff claims that during his incarceration he lost approximately 50-60 lbs. (Comp. ¶65.)

On or about February 3, 2004, Judge Mayer issued an order vacating her November 18, 2003 order and remanding Plaintiff to the custody of the Commissioner of the Department of Human Services to determine whether further hospitalization was necessary. (Comp. ¶63.) On February 5, 2004, Plaintiff was released from TPH.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact and it must prevail as a matter of law, or that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

### III. DISCUSSION

Defendants Maria McQuay, Kathy DeFuria, Middlesex Vicinage Probation Division (MVPD), Manoj Thomas, Collette Dorival, Victoria Canavera, and Trenton Psychiatric Hospital (TPH) contend that Plaintiff's Complaint fails to sufficiently allege any claims upon which relief can be granted. This Court will consider each of the presented arguments in turn.

***Whether Plaintiff has stated claims under 1983 against Defendants Dorival and Thomas***

In order to recover against Defendants Dorival and Thomas, Plaintiff must show that he was deprived of a constitutional right by a person acting under the color of state law. 42 U.S.C. § 1983; see, e.g., Groman v. Tp. of Manalapan, 47 F.3d 628, 633 (3d Cir.1995) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Here, it is clear that Defendants Dorival and Thomas were acting under color of state law because, at the time of the alleged incidents, Defendant Thomas was the Director of Patient Information at Trenton Psychiatric Hospital ("TPH") and Defendant Dorival was an employee of TPH. TPH is operated by the State of New Jersey. See West v. Atkins, 487 U.S. 42, 48-54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Therefore, the Court next turns to whether Plaintiff has sufficiently alleged that Defendants Thomas and/or Dorival deprived him of any constitutional rights.

Plaintiff alleges that Defendants Thomas and Dorival permitted him to not shower, to wear the same clothes for several days at a time, and failed to protect Plaintiff from being attacked by another patient, thereby disregarding an excessive risk to Plaintiff's health and safety. (Comp. ¶75.) Plaintiff asserts that his claim should be analyzed pursuant to the Eighth Amendment standard protecting prisoners from "cruel and unusual punishment." (Comp. ¶12.) Defendants, however, contend that because the alleged violation occurred at TPH, rather than a

prison or jail, it is more properly considered as a substantive due process claim arising under the Fourteenth Amendment. (Def. Mov. Br. at 15.)

Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment and convicted prisoners are protected by the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535, n.16 (1979). However, the Court of Appeals for the Third Circuit has analyzed pretrial detainee medical care claims utilizing the Eighth Amendment standard. See Hubbard v. Taylor, 399 F.3d 150, 166 n.22 (3d Cir. 2005); Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); Sylvester v. City of Newark, 120 Fed. Appx. 419 (3d Cir. 2005). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988). The seriousness of an inmate's medical need may

also be determined by reference to the effect of denying the particular treatment. Id. at 347. For example, pursuant to Estelle, if "unnecessary and wanton infliction of pain" results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment. Estelle, 429 U.S. at 105. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. See, e.g., Archer, 733 F.2d at 16 (pregnant inmate who miscarried stated cognizable claim where she alleged that defendants intentionally delayed emergency medical aid in order to make her suffer).

The Court finds that Plaintiff has failed to allege a serious medical need. Plaintiff has alleged that while at TPH he was permitted not to shower or change his clothes for several days. (Comp. ¶75.) Also, according to Plaintiff's mother, Plaintiff had eczema, seborrhea of the scalp and athlete's foot while at TPH and was not treated for these conditions. (Cert. of Wendy Tsakonas ("Tsakonas Cert.") at ¶11.) However, it is the Opinion of this Court that none of these conditions constitute a serious medical need under the standards set forth in Estelle.[3] Although Plaintiff may have experienced discomfort, pursuant to the descriptions submitted by Plaintiff, these are not conditions that caused substantial pain or risk to his health. Also, viewing the seriousness of the conditions in reference to the effect of denying the particular treatment, Plaintiff has not alleged any long term effects from his medical ailments. Further, Plaintiff's

---

[3]In Plaintiff's Opposition, he provides descriptions of eczema, seborrhea of the scalp and athlete's foot apparently retrieved from internet-based research. Specifically, Plaintiff states: "According to the National Eczema Society, "[i]n mild forms [of eczema], the skin is dry, hot and itchy, while in more severe forms the skin can become broken, raw and bleeding." (http://www.eczema.org) "Seborrhea is a form of skin inflammation (dermatitis) that causes a red, oily, flaking skin rash..."  (Aetna Intellihealth, Seborrheic Dermatitis (Seborrhea), (http://www.intelihealth.com/IH/ihIH/WSIHW000/9339/31342.html); The Skin Site, Tinea Pedis (http://www.skinsite.com/info tinea pedis.html) (stating that athlete's foot is a "skin infection caused by a kind of mold caused a fungus.")

-10-

Complaint does not allege that he made any requests for medical care for these alleged conditions while at the TPH.  As such, the Court finds that Plaintiff has failed to sufficiently allege a serious medical need, and therefore failed to allege conduct in violation of his constitutional rights against Defendant Dorival and/or Thomas.

Plaintiff asks this Court for the opportunity to file a curative complaint so as to avoid dismissal.  Defendant objects to this request on the grounds that further amendment would be futile.

The Third Circuit requires a court to grant leave to amend before dismissing a complaint that is merely deficient. See Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir.2001); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.2000). Dismissal with prejudice is appropriate only in certain circumstances, including circumstances in which further amendment would be futile because any revised pleading would not withstand a motion to dismiss. Alston v. Parker, 363 F.3d 229, 236 (3d Cir.2004) ( "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").  The Third Circuit has recognized that futility precludes amendment "if the amendment will not cure the deficiency in the original complaint, or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir.1988) (citing Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir.1983 )).

Here, the Court agrees with Defendants that it would be futile at this point to afford Plaintiff the opportunity to amend his complaint.  Plaintiff has already had the opportunity to amend his complaint three times, and certain discovery has already ensued, including Plaintiff being given access to his medical records at the TPH. As such, Plaintiff is denied leave to amend

-11-

his Complaint as to Defendants Dorival and Thomas.  Accordingly, Plaintiff's claims against Defendants Thomas and Dorival are dismissed.

***Whether Plaintiff has stated claims pursuant to Section 1983 against Defendant Canavera***

In his second cause of action, Plaintiff asserts a Section 1983 claim for inadequate medical care against Defendant Canavera, identified in Plaintiff's Complaint as a coordinator for the Department of Human Services, Division of Mental Health Services at Ann Klein Forensic Center.  Defendant Canavera moves to dismiss Plaintiff's claim on the grounds that she did not act with deliberate indifference to a substantial medical need.

In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See Estelle, 429 U.S. at 106.  Here, Defendant contends that Plaintiff has failed to meet either of these requirements.

With respect to Defendant Canavera, Plaintiff alleges in his Complaint that she evidenced deliberate indifference to Plaintiff's health and safety by delaying his evaluation and treatment and ignoring the evidence that he was suffering from psychological illness.  According to the facts alleged by Plaintiff, and the certifications submitted by the parties in support of this motion, on November 6, 2003 Judge Mayer first ordered the MCACC to make arrangements for a 30-day inpatient evaluation of Plaintiff at the AKFC "as soon as possible."  (Duff Cert, Ex. G.) Defendant Vargas called the AKFC to schedule an evaluation on November 19, 2003. (Comp. ¶39.)  Plaintiff was examined at the AKFC on December 11, 2003.  (Duff Cert., Ex. K.)  As such, its appears the a period of twenty-three days passed between the time Defendant Vargas called to schedule the appointment at the AKFC and the time the Plaintiff was examined.  The only

specific allegations made by Plaintiff against Defendant Canavera relate to her writing a letter ("the Canavera letter") to Judge Mayer describing the findings of the December 11, 2003 evaluation. (Duff Cert, Ex. I.)

These factual allegations do not support the inference that Defendant Canavera evidenced deliberate indifference to Plaintiff's health and safety. First, the Canavera letter supports an inference that Defendant Canavera was in fact aware that Plaintiff was suffering from a psychological illness. Defendant Canavera noted in the letter that Plaintiff was examined by Dr. Joseph and thereafter recommended for an in-patient evaluation to the TPH. Further, Defendant Canavera stated that all necessary paperwork for this evaluation was forwarded to the Admission Coordinator for processing. This does not constitute ignoring the evidence that Plaintiff was suffering from a psychological illness. With respect to Plaintiff's allegations regarding a delay in evaluation, although it may have been preferable to Plaintiff to have been examined immediately, twenty-three days is not an excessive period of time.

To the extent that Plaintiff alleges that Defendant Canavera should be held liable for Plaintiff's treatment at the MCACC, these claims are without merit. Canavera is a state employee at the AKFC, and as such it cannot be inferred that she has any responsibility for Plaintiff's care while at the MCACC.

In light of the above, the Court finds that Plaintiff has failed to allege a constitutional violation against Defendant Canavera. As such, all the claims asserted by Plaintiff against Defendant Canavera in the Second Cause of Action must be dismissed.

***Whether Plaintiff has stated claims pursuant to LAD against Defendant Canavera***

In his third cause of action, Plaintiff alleges that Defendant Canavera took actions that she

-13-

knew were a breach of MCACC's duty under the LAD, and knowingly gave substantial assistance or encouragement to said unlawful conduct. (Comp. ¶83.) Defendant Canavera moves to dismiss these allegations on the grounds that as an employee of AKFC, she can not be held liable for a breach of duty by the MCACC. Plaintiff argues that Defendant Canavera's liability arises from her participation in Plaintiff's evaluation and treatment while Plaintiff was at MCACC. The Court is not persuaded by this argument. All of the allegations made pursuant to the third cause of action relate solely to MCACC and not the AKFC. Defendant Canavera is a coordinator for the Department of Human Services, Division of Mental Health Services at AKFC and the only factual reference to Defendant Canavera in Plaintiff's Complaint is related to the letter written to Judge Mayer. Plaintiff has not provided any support for his conclusory allegations that Canavera participated in Plaintiff's evaluations or treatments by the MCACC, but rather only as to her role in reporting on Plaintiff's evaluation at the AKFC to Judge Mayer. As such, Plaintiff's third cause of action is dismissed as to Defendant Canavera.

***Plaintiff's claims for Section 1983 and common law malicious prosecution, false arrest and abuse of process***

Issues of material fact exist as to Plaintiff's remaining claims against Defendants MVPD, McQuay and Defuria. As such, Defendants' request for summary judgment regarding Plaintiff's claims for malicious prosecution and false arrest are denied.

***Qualified Immunity***

Plaintiff has alleged that Defendants, in their official and non-official capacities, violated his civil rights. Defendants assert they are entitled to qualified immunity because they were government employees at all times relevant to Plaintiff's allegations. "Qualified immunity is 'an

-14-

entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

The initial inquiry for a court addressing a claim of qualified immunity is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." Id. at 201. If a constitutional violation cannot be established, the inquiry ends. Id. However, if a violation can be made, then the court must determine whether the constitutional right was clearly established. Id. A right has been clearly established if "it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." Id. at 202; Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004). Therefore, "[i]f the law did not put the [defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id.

Here, it has yet to be determined whether Defendants McQuay and Defuria violated Plaintiff's constitutional rights. As such, the Court finds it is not appropriate to grant qualified immunity at this time, but reserves the right to grant such relief after the factual issues are resolved. Accordingly, Defendants' motion for summary judgment based on qualified immunity is denied.

*Eleventh Amendment Immunity*

Defendant moves for, and Plaintiff does not object to, dismissal of Plaintiff's Section 1983 claims against TPH and MVPD and their employees acting in their official capacity on the grounds that they are "persons" subject to suit pursuant to the Eleventh Amendment and Section

1983. As such, this Court considers Defendants' motion to dismiss Plaintiff's Section 1983 claims against said Defendants unopposed. The Court agrees that Defendants TPH, MVPD and the remaining State Defendants can not be sued in their official capacity and therefore Defendants' motion is **granted**.

## IV. CONCLUSION

For the reasons stated, Defendants' motion for summary judgment is **granted in part and denied in part**. An appropriate Order accompanies this Opinion.

                      S/ Dennis M. Cavanaugh
                      Dennis M. Cavanaugh, U.S.D.J.

Date: May 17, 2006
Original: Clerk's Office
cc: All Counsel of Record
     File