NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAUL TSAKONAS, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 04-cv-4973 (DMC) |
| WARDEN EDMOND CHICCI, individually and as Warden at MIDDLESEX COUNTY CORRECTION CENTER, et al., |  |
| Defendants. |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon separate motions by Defendants Warden Edmond Chicci ("Warden Chicci"), Middlesex County ("Middlesex"), Middlesex County Adult Correction Center ("MCACC"), Probation Officer Maria M. McQuay ("Officer McQuay"), Probation Officer Kathie DeFuria ("Officer DeFuria"), Dr. Hugh Moore ("Dr. Moore"), and Sandra Vargas, RN ("Nurse Vargas") (collectively "Defendants") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Also pending before this Court is Plaintiff Paul Tsakonas' ("Plaintiff") motion to strike the Certification of Probation Officer Ana Buscek ("Buscek Certification"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiff's motion to strike is **denied**, and Defendants' motions for summary judgment are **granted**.

I.   **BACKGROUND**

    A.   **Factual Background**

On March 6, 2003, Plaintiff pled guilty to violating a restraining order issued by the Middlesex County Family Court and was sentenced to one-year probation. (State Defendants' Statement of Material Facts [hereinafter "State Defs. SOMF"] ¶ 6.) Probation Officer Ana Buscek ("Officer Buscek") was assigned to Plaintiff's case. (State Defs. SOMF ¶ 8.) Plaintiff was informed that he must attend anger management classes and meet with Officer Buscek regularly, and that should he fail to meet the conditions of his probation he would be charged with violating probation. (State Defs. SOMF ¶ 10, 21, 22.) Plaintiff informed Officer Buscek of various jobs he acquired and was granted permission by Officer Buscek to go to Florida from July 28, 2003 until August 31, 2003 to attend school. (State Defs. SOMF ¶ 27.) Plaintiff also failed to report to scheduled meetings with Officer Buscek on March 26, 2003, April 22, 2003, June 3, 2003, and October 8, 2003 (State Defs. SOMF ¶ 12, 18, 24, 32), and failed to provide her with any proof that he attended anger management counseling as instructed (State Defs. SOMF ¶ 36.) In fact, Plaintiff admitted in his deposition that he failed to provide any proof of attending anger management classes and that he failed to attend a number of the sessions (State Defs. SOMF ¶ 38.)

In October 2003, Officer Buscek took a leave of absence from work (State Defs. SOMF ¶ 35), and Probation Officer McQuay was assigned to Plaintiff's case. (State Defs. SOMF ¶ 45.) On October 26, 2003, Plaintiff was arrested at the Ivory Tower Hotel in Middlesex, New Jersey following an incident where he hit a lobby payphone. (State Defs. SOMF ¶ 39, 40.) Plaintiff became verbally abusive and took a combative posture with police, and ultimately the police restrained and handcuffed Plaintiff before taking him to the police station. (State Defs. SOMF ¶ 41.)

Plaintiff was then admitted to Somerset Medical Center for psychiatric observation. Plaintiff's mother called the hospital and stated that Plaintiff was addicted to ecstasy and crack cocaine. (State Defs. SOMF ¶ 42.) Plaintiff's mother also informed Officers McQuay and DeFuria (McQuay's supervisor) that Plaintiff had a drug abuse problem. (State Defs. SOMF ¶ 44, 45, 49.) Additionally, Plaintiff's mother told Officer DeFuria that Plaintiff's Tae Kwon Do instructor believed Plaintiff was using drugs. (State Defs. SOMF ¶ 49.) On October 28, 2003, Officer McQuay informed Plaintiff that he had to go into an in-patient drug rehabilitation center by the end of the week or she would file violation of probation charges. (State Defs. SOMF ¶ 51.) Plaintiff then refused to enter "Last Chance" for a drug treatment program. (State Defs. SOMF ¶ 54, 55.) Officers McQuay and DeFuria subsequently filed Violation of Probation charges against Plaintiff. (State Defs. SOMF ¶ 61.)

On November 6, 2003, Plaintiff appeared in Middlesex County Courthouse for the hearing on his violation of probation charges. (State Defs. SOMF ¶ 76.) Judge Mayer ordered that the MCACC make arrangements for Plaintiff to have a 30-day inpatient evaluation at the Ann Klein Forensic Center. (Medical and County Defendants' Statement of Material Facts [hereinafter "Med. Defs. SOMF"] ¶ 6.) After initial assessments at MCACC on November 6, Plaintiff was held in the medical unit as per the court order. (Med. Defs. SOMF ¶ 8.) Nurse Vargas noted Plaintiff was agitated and unpredictable, and should be on high visibility psychiatric watch. (Med. Defs. SOMF ¶ 9.) The next morning, Dr. Moore made a note after meeting with Plaintiff and talking with Plaintiff's mother, stating his belief that Plaintiff was still under the influence of one or more drugs due to his nervousness and mild disorientation. (Med. Defs. SOMF ¶ 11.) Nurse Vargas also spoke with Plaintiff's mother frequently, kept the court appraised of Plaintiff's status, and forwarded Judge Mayer's order to the Ann Klein Forensic Center. (Med. Defs. SOMF ¶ 15, 13.) Once aware that Ann Klein had no beds available, Dr. Moore transferred Plaintiff to Acute Psychiatric Services at

University Behavioral Healthcare on November 14, 2003; however, Plaintiff did not meet Acute Psychiatric Services "standard of dangerousness" and was returned to MCACC. (Med. Defs. SOMF ¶ 16, 17.) While at MCACC, several mental health providers saw Plaintiff. (Med. Defs. SOMF ¶ 12.)

On November 17 and 18, 2003 Judge Mayer ordered that Plaintiff be evaluated at Trenton Psychiatric Hospital since there was no room at Ann Klein, and that Plaintiff once again be examined. (Med. Defs. SOMF ¶ 18.) Dr. Christine Joseph evaluated Plaintiff on December 11, 2003, reporting that Plaintiff was unpredictable, refused medications, denied suffering from any mental illness, and refused to shower. (Med. Defs. SOMF ¶ 19, 20.) However, Plaintiff ate, brushed his teeth, moved his bowels, and showered at least twice while at MCACC. (Med. Defs. SOMF ¶ 23, 24, 26.)

Plaintiff alleged that he sustained injuries at MCACC, including eczema, sebeorrhea, and athlete's foot. (Med. Defs. SOMF ¶ 29.) Plaintiff never met Warden Chicci and never complained to him about any injury. (Med. Defs. SOMF ¶ 22, 27.) Plaintiff never filled out a medical request form to see a nurse or doctor. (Med. Defs. ¶ 30.) Nurse Vargas also never noticed that Plaintiff was not keeping proper hygiene. (Med. Defs. SOMF ¶ 25.) Plaintiff was finally transferred to Trenton Psychiatric Hospital on January, 8, 2004, where treatment for his mental health problems continued. (Med. Defs. SOMF ¶ 31, 32.)

**B.      Procedural Background**

Plaintiff filed this action on October 12, 2004. Plaintiff's counsel filed the Third Amended Complaint on December 1, 2005, which is the subject of this litigation. Defendants filed Motions to Dismiss in January 2006, which were granted in part and denied in part by this Court on May 17,

2006, dismissing a number of Defendants who are no longer part of this case. On the same day, this Court also ruled that the medical problems Plaintiff allegedly suffered while at MCACC -- including eczema, sebeorrhea, and athlete's foot -- are not sufficiently serious to rise to the level of a constitutional violation if not treated. Subsequently, the remaining Defendants filed these Motions for Summary Judgment.

**II.    STANDARD OF REVIEW**

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III.   DISCUSSION**

    **A.    Motion to Strike**

In response to Defendants' Motions to Dismiss, Plaintiff seeks to strike the Certification of Officer Buscek. Citing a Second Circuit case, Plaintiff argues that this court should "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." Hollander v. Am. Cyanamid Co., 172 F.3d 192,

198 (2d Cir. 1999). Even if this court chose to accept the rule set forth by the Second Circuit, Plaintiff's argument still fails. Plaintiff does not claim any inadmissible hearsay or conclusory statements in Buscek's Certification, but rather claims that the Certification is not based on personal knowledge. This allegation is totally unfounded as Officer Buscek had telephone conversations with Plaintiff as well as one-on-one meetings with him as part of his probation. Therefore, Plaintiff's motion to strike the Buscek Certification is denied.

Plaintiff also alleges that Buscek's Certification contradicts her prior deposition testimony, consequently creating a credibility issue sufficient to prevent summary judgment. (Pl. Opp'n Br. at 25) (citing In re CitX Corp., Inc., 448 F.3d 672, 680 (3d Cir. 2006)). In In re CitX, the affidavit was a "scheme to provide sufficient 'facts' to survive a summary judgment." Id. at 679. However, the alleged contradictions in Buscek's Certification are facts that Officer Buscek has forgotten since she retired, such as how many times she met with Plaintiff and when exactly Plaintiff went to Florida. This case is unlike In re CitX because Officer Buscek's lack of recollection about specific events from one of her former cases does not rise to the level of "scheming." Furthermore, "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." Baer v. Chase, 392 F.3d 609, 625 (3d Cir. 2004). In their Statement of Material Facts, the State Defendants rely on Buscek's Certification heavily. Yet in Plaintiff's Statement of Material Facts, he accepts as true many if not most of the State Defendants' facts drawn from Buscek's Certification. By consenting to the evidence in this certification and using it as his own independent evidence, Plaintiff has bolstered the very certification he sought to discredit. Consequently, with this additional credence, this Court will not disregard Buscek's Certification.

Therefore, Plaintiff's motion to strike the Certification is dismissed, and the Certification does not pose significant contradictions to prevent summary judgment on behalf of Defendants.

### B. Malicious Prosecution

Plaintiff's first cause of action seeks relief pursuant to the Fourth Amendment on a claim of malicious prosecution. Specifically, Plaintiff claims that neither Officer McQuay nor Officer DeFuria had probable cause to allege that Plaintiff had violated his probation. To state a *prima facie* case for malicious prosecution, a Plaintiff must show: (1) the criminal charge was instituted or continued by the defendant against the plaintiff; (2) the prosecution resulted in a seizure or violation of other explicit text of the Constitution; (3) an absence of probable cause to prosecute; (4) the prosecution was actuated by malice, which may be inferred from an absence of probable cause or a primary purpose other than to bring the offender to justice; and (5) a favorable termination. Robinson v. Chambers, No. 06-2284, 2006 U.S. Dist. LEXIS 47878, at *5 (D.N.J. Jul. 13, 2006). Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

In the present case, Officers McQuay and DeFuria had sufficient evidence before them to lead a reasonable person to believe that Plaintiff violated his probation. Plaintiff was arrested for striking a pay phone in a hotel lobby and then took a combative stance with police upon arrest. Individuals close to Plaintiff -- his mother and his Tae Kwan Do instructor -- both claimed they believed Plaintiff used illegal drugs, which would also constitute a violation of probation. Additionally, Plaintiff failed to complete his anger management counseling as ordered, and failed to provide any proof of his

attending the program at all.  Plaintiff also failed to appear for appointments with Officer Buscek on several occasions.  Finally, Plaintiff refused to enter the "Last Chance" in-patient drug rehabilitation program despite warnings from Officer McQuay that if he did not he would be held in violation of probation.  Whether or not the Officers could have made a greater effort to force Plaintiff to comply with the terms of his probation by issuing drug tests or meeting with him is irrelevant.  The totality of the circumstances known to Officers McQuay and DeFuria would lead a reasonable person to believe that Plaintiff violated his probation.

In his first cause of action, Plaintiff also alleges that Middlesex has supervisory liability in Plaintiff's malicious prosecution claim for failure to train and supervise Officers McQuay and DeFuria.  Even if the officers were guilty of malicious prosecution, Middlesex is still not liable for their actions.  Pursuant to the New Jersey Constitution, "all judicial employees and probation employees shall be employees of the state."  N.J. CONST. art. VI, §8, ¶1(a)(2).  See also Board of Chosen Freeholders of County of Morris v. State, 710 A.2d 1060, 1063 (N.J. Super. Ct. Law Div. 1997) ("[A]ll of the judicial employees and probation employees who were previously employees of the various counties shall become employees of the State."), aff'd, 732 A.2d 1053 (N.J. 1999). Consequently, the State of New Jersey is responsible for supervising probation officers, and Middlesex is free of any liability in the matter.

Therefore, Defendants' motions for summary judgment on Plaintiff's first cause of action against Officer McQuay, Officer DeFuria, and Middlesex is granted.

### C.    Cruel and Unusual Punishment

Plaintiff's second cause of action alleges cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments due to inadequate medical treatment by Dr. Moore and Nurse

Vargas while being held at MCACC. In <u>Estelle v. Gamble</u>, the Supreme Court established the standard for cruel and unusual punishment claims by prisoners: only "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)). In other words, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Therefore, to prevail on a claim for cruel and unusual punishment, Plaintiff must show both (1) deliberate indifference by the prison officials and (2) the prisoner to have serious medical needs. <u>See</u> <u>West v. Keve</u>, 571 F.2d 158, 161 (3d Cir. 1978).

In the instant matter, the actions of Dr. Moore and Nurse Vargas fail to rise to the level of cruel and unusual punishment. The morning after Plaintiff arrived at MCACC, Dr. Moore met with Plaintiff twice and spoke with Plaintiff's mother. Dr. Moore made a note, detailing these meetings and conversations, ultimately coming to the conclusion that he believed that Plaintiff was still under the influence of one or more drugs. Vargas was also in frequent contact with Plaintiff's mother. This care was far from deliberate indifference, and was in fact prompt, thorough care. Dr. Moore and Nurse Vargas also worked diligently to execute Judge Mayer's order regarding an in-patient evaluation for Plaintiff. Vargas forwarded the court order to the Ann Klein Forensic Center, and once it was learned Ann Klein was full, Dr. Moore sent Plaintiff to Acute Psychiatric Services. Though that placement ultimately failed, Dr. Moore and Nurse Vargas succeeded in following Judge Mayer's next order in sending Plaintiff to Trenton Psychiatric Hospital. Additionally, Dr. Moore and Nurse Vargas did not cause Plaintiff's alleged physical injuries, which included eczema,

sebeorrhea, and athlete's foot. Plaintiff had the opportunity to contact either Nurse Vargas or Dr. Moore to bring these conditions to their attention and never did. Furthermore, even if Dr. Moore and Nurse Vargas were aware of these conditions and were deliberately indifferent to Plaintiff, this Court has already concluded that Plaintiff's conditions do not constitute serious medical needs. Hence the failure to treat these conditions falls short of meeting either prong of the West test. 571 F.2d at 161.

Additionally, the actions of Warden Cicchi, Middlesex, and MCACC do not establish violations of the Eighth and Fourteenth Amendments. None of these defendants ever directly interacted with or had any day-to-day involvement with Plaintiff; consequently, these Defendants could only have perpetrated cruel and unusual punishment through their actions as supervisors. Supervisory officials may be liable for the constitutional torts of their subordinates if "the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event." Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998). While at MCACC, Plaintiff was seen by several mental health providers. As described above, the employees at MCACC worked diligently to execute Judge Mayer's orders in transferring Plaintiff to an in-patient drug treatment program. This kind of treatment falls short of the high standard of "grossly negligent." Consequently, these defendants are not liable for the constitutional violations of their employees because their employees -- Dr. Moore and Nurse Vargas -- never violated the Constitution themselves.

Though Plaintiff is unsatisfied with the medical treatment he received, "a prisoner's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief." Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). The actions of Dr. Moore, Nurse Vargas, Warden Cicchi, Middlesex, and MCACC do not rise to the level of a

constitutional violation, and therefore Defendants' motions for summary judgment on Plaintiff's second cause of action is granted.

### D. Discrimination

In his third, fourth, and fifth causes of action, Plaintiff claims a number of Defendants discriminated against him, pursuant to the New Jersey Law Against Discrimination ("LAD"), the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973. The third cause of action alleges that Dr. Moore, Nurse Vargas, Middlesex, MCACC, and Warden Cicchi failed to provide Plaintiff with adequate medical care and unlawfully discriminated against Plaintiff pursuant to LAD. See N.J.S.A. 10:5-1 - 42. As discussed above, there is no evidence that Plaintiff received inadequate care: Plaintiff was seen by several mental health care providers and all efforts were made to have Plaintiff transferred as per Judge Mayer's court orders. Plaintiff also fails to point to any evidence where he was not treated in the same manner as other inmates at MCACC. Like the other inmates, Plaintiff had access to medical care, but he elected not to take advantage of it. Due to this lack of evidence of discrimination, Plaintiff's third cause of action fails.

The fourth and fifth causes of action state that Middlesex and MCACC violated the ADA and Rehabilitation Act by failing to provide Plaintiff with adequate medical services to accommodate his disability and by unlawfully excluding Plaintiff from said services that were provided to others. See 42 U.S.C. §§12131-12165, 29 U.S.C. §794. Once again, Plaintiff points to no evidence that he was excluded or denied from participating in any of MCACC's medical services. There is also no evidence to prove Plaintiff was discriminated against because of his disability or otherwise. Without this evidence, Plaintiff's fourth and fifth causes of action fail.

Therefore, since there was no discrimination against Plaintiff, Defendants' motions for

summary judgment on Plaintiff's third, fourth, and fifth causes of action are granted.

### E. Abuse of Process

Plaintiff's sixth cause of action alleges that Officers McQuay and DeFuria, subsequent to filing violation of probation charges against Plaintiff, "used the court process for a purpose not justified by the law." (Third Am. Compl. ¶ 94.) The elements for a claim of abuse of process are: "(1) the defendant has set legal process in motion for an improper ulterior purpose, and (2) the defendant has committed a willful act in the use of process which perverts the regular conduct of the proceeding to accomplish the improper purpose." Voytko v. Ramada Inn of Atl. City, 445 F. Supp. 315, 325 (D.N.J. 1978). In the present case, there is no evidence of Officer McQuay or Officer DeFuria initiating legal proceedings against Plaintiff for any improper purpose; on the contrary, as discussed above, there is ample evidence to establish that the Officers filed charges only in response to Plaintiff's actions that violated his probation. Additionally, Plaintiff does not put forth a single piece of evidence suggesting that Officers McQuay and DeFuria interfered with or perverted in any way the court proceedings that followed the filing of the violation of probation charges. Consequently, Plaintiff's claim against the Officers is meritless.

In his sixth cause of action, Plaintiff also alleges that Middlesex is subject to supervisory liability in Plaintiff's malicious abuse of process claim for failure to train and supervise Officers McQuay and DeFuria. Even if the officers were guilty of abuse of process, pursuant to the New Jersey Constitution, "all judicial employees and probation employees shall be employees of the state." N.J. CONST. art. VI, §8, ¶1(a)(2). See also Board of Chosen Freeholders, 710 A.2d at 1063. Consequently, the State of New Jersey is responsible for supervising probation officers, and Middlesex County is free of any liability in the matter.

Therefore, Defendants' motions for summary judgment for Plaintiff's sixth cause of action against Officer McQuay, Officer DeFuria, and Middlesex is granted.

### F. False Arrest

In his Reply Brief, Plaintiff alleges that he was falsely arrested by Officers McQuay and DeFuria. However, "[a] moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." D'Alessandro v. Bugler Tobacco Co., No. 05-5051, 2007 WL 130798, *2 (D.N.J. January 12, 2007) (citing Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992)). In the present case, Plaintiff never put forth a claim of false arrest in his Third Amended Complaint, but instead sought to raise the claim for the first time in his Reply Brief. Therefore, the Court will not consider Plaintiff's false arrest claim.

### IV. CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's motion to strike is **dismissed** and Defendants' motions for summary judgment are **granted**. An appropriate Order accompanies this Opinion.

  S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:      August __6__, 2007
Orig.:      Clerk
cc:        Counsel of Record
           The Honorable Mark Falk, U.S.M.J.
           File